**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br>v.<br>OSCAR JAVIER GARCIA-HERNANDEZ,<br><br>Defendant. | CASE NO. 07-CR-02383-L<br><br>**ORDER FOLLOWING TRIAL** |

### A.   INTRODUCTION

On August 29, 2007, a federal grand jury in the Southern District of California returned an Indictment charging the Defendant Oscar Javier Garcia-Hernandez ("Defendant") with one count of Attempted Reentry in violation of Title 8, United States Code, § 1326(a) and (b). Defendant was arraigned on the Indictment on October 1, 2007, and entered a plea of "not guilty." Thereafter, Defendant filed several substantive motions, which included: 1) Motion to Dismiss Indictment Because it Fails to Allege All Elements of the Charged Offense;  2) Motion to Dismiss Indictment Because it Violates Defendant's Right to Presentment;  3) Motion to Dismiss Indictment Due to Misinstruction of the Grand Jury;  4) Motion to Strike

Surplusage from the Indictment; 5) Motion to Dismiss Indictment Because it Violates Defendant's Right to Speedy Trial; 6) Motion to Produce Grand Jury Transcripts; and 7) Motion to Suppress Statements.

A motion hearing was held on January 22, 2008, where the Court addressed each of Defendant's substantive motions. The Court denied the following motions during that hearing: 1) Motion to Dismiss Indictment Because it Fails to Allege All Elements of the Charged Offense; 2) Motion to Dismiss Indictment Because it Violates Defendant's Right to Presentment; 3) Motion to Dismiss Indictment Due to Misinstruction of the Grand Jury; 4) Motion to Dismiss Indictment Because it Violates Defendant's Right to Speedy Trial; and 5) Motion to Produce Grand Jury Transcripts. The Court reserved ruling on both the Motion to Strike Surplusage from the Indictment and the Motion to Suppress Statements.

The Court later denied Defendant's Motion to Strike Surplusage from the Indictment on March 3, 2008. Also on that date, the parties consented to a bench trial. The Court also agreed to have Defendant's Motion to Suppress heard simultaneously with the trial testimony.

### B. TRIAL TESTIMONY

Defendant's bench trial began on March 5, 2008, and lasted one day. The Government called four witnesses: 1) United States Border Patrol Agent Martin Macias; 2) United States Border Patrol Agent Jorge Anderson; 3) United States Border Patrol Agent Thomas Steele; and 4) United States Border Patrol Agent Jason McGilvray. The parties stipulated to the testimony of the fingerprint expert. The Defendant exercised his right not to testify.

During the trial, evidence was presented that Defendant was apprehended on July 2, 2007, after crossing the Mexican/United States border sometime around 4:00 a.m. An ariel photograph was placed into evidence that illustrated the remote area where the Defendant had crossed, specifically the six foot berm just before the drag road where the Defendant traversed. *See* Exhibit One (Google Earth Location of Apprehension). After his apprehension, Defendant was turned over to United States Border Patrol Agent Martin Macias ("Agent Macias"). Agent

Macias testified that he took custody of Defendant at 4:10 a.m., and informed Defendant of his administrative rights as well as obtained limited biographical information from him. *See* Exhibit Two (Form I-826).[1]

Defendant remained in custody from 4:00 a.m. to 5:00 p.m. before his processing began. Approximately six and one half hours later, at 11:43 p.m., Defendant was advised that his administrative rights were no longer applicable. Defendant was then admonished of his *Miranda* rights. United States Border Patrol Agent Jorge Anderson ("Agent Anderson") confirmed this time line and explained the reason behind the delay. Due to the heavy caseload on July 2, 2007, Defendant could not be processed prior to 5:00 p.m. Apparently, there were 32 apprehensions during the 1:00 a.m. to 8:00 a.m. shift, and 47 apprehensions during the day shift. This included six separate cases. Also noteworthy, Defendant was originally held as a "reinstatement of removal" case, and not as a criminal prosecution matter.

As a result, Defendant's processing began at 5:00 p.m. Defendant was again advised of his administrative rights pursuant to Form 215B at 6:00 p.m. *See* Exhibit C (Form 215B). The Administrative Rights form includes an "advice of rights". The questions, which the Defendant answered included place of birth and when, how, and where Defendant entered the United States. Although form 215B has the name of "Eduardo Vasquez, an Officer of the Immigration and Naturalization Service," Agent Anderson testified that his signature is on the third page and that he himself took Defendant's information. Agent Anderson also testified that processing, including finger prints, typically takes about three and one half hours. The matter was then submitted to Agent Anderson's supervisor. After review, his supervisor concluded that Defendant met the guidelines for criminal prosecution. Defendant was informed of this fact at 11:43 p.m. The Defendant was also informed that his administrative rights were no longer applicable. Defendant was then informed of his *Miranda* rights.

...

---

[1] Although the Court accepted Exhibit Two into evidence at the time of trial, the Court did not include Exhibit Two in its consideration of the elements, nor in its determination of Defendant's Motion to Suppress, given that Defendant was subsequently advised of his administrative rights at 6 p.m. pursuant to Form 215B. *See* Exhibit C (Form 215B).

After stating that he understood his rights, Defendant agreed to make a videotaped statement. In that statement, Defendant admitted to his illegal status. During the trial, the defense pointed to a disparity in Agent Anderson's report as to the chronology of the order of the advisement of *Miranda* rights and that of the advisement of administrative rights. The Government, however, provided a supplemental report prior to trial to the defense, which explained away the disparity. Agent Anderson mistakenly ascribed the substance of Defendant's post "administrative rights" statement as having occurred during his post-*Miranda* statement. Apparently, during the process of "cutting-and- pasting," the *Miranda* admonishment was placed in the third paragraph rather than placed in its intended and precise place at the end of the document. Accordingly, the supplemental report was the true and accurate chronology of events. The court accepts this testimony as true.

### C.   MOTION TO SUPPRESS

In his Motion to Suppress, Defendant attacks the admissibility of his post-*Miranda* statement on the following bases: 1) the statement Defendant made was involuntary;  2) the statement violated *United States v. San Juan Cruz*;  3) the statement violated *Missouri v. Seibert* ; and 4) the statement was taken outside the six hour "safe harbor period."

1.   Voluntariness of Defendant's Statement

Defendant first argues that his statement was made involuntarily. Individuals possess the right to be informed, prior to custodial interrogation, "that [they have] the right to the presence of an attorney, and that if [they] cannot afford an attorney one will be appointed for [them] prior to any questioning if [they] so desire [ ]." *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda* and 18 U.S.C. § 3501, a statement that is made in response to custodial interrogation is admissible, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by

1  improper coercion. *Colorado v. Connelly*, 479 U.S. 157, 167-70, 107 S.Ct. 515, 521-523, 93
2  L.Ed.2d 473 (1986) (coercive police activity is "a necessary predicate" to finding a confession
3  involuntary). The Court determines voluntariness by considering the totality of the
4  surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36
5  L.Ed.2d 854 (1973).

6  Here, Defendant's post-arrest statement is admissible because he voluntarily waived his
7  *Miranda* rights. On July 2, 2007, Agent Anderson advised Defendant of his *Miranda* rights
8  as witnessed by United States Border Patrol Agent David Lopez. Defendant has not alleged,
9  nor is the Court aware, of any specific facts that support the advisement of rights as somehow
10 flawed, or that Defendant's waiver of *Miranda* rights was the result of improper coercion.
11 Defendant acknowledged that he understood his rights and agreed to waive his rights.
12 Defendant then made a statement, which was recorded on video. Defendant was advised of
13 his *Miranda* rights and he voluntarily waived his rights prior to making any statement.
14 Therefore, the Court finds that Defendant's statement was made voluntarily.

16         2.    Defendant's Post-*Miranda* Waiver was not Invalidated by the Advisal of Administrative Rights

18  Citing *United States v. San Juan Cruz*, 314 F.3d 384 (9th Cir. 2002), Defendant argues
19 that his post-*Miranda* waiver was not valid. In finding an invalid waiver in *San Juan Cruz*,
20 the Ninth Circuit noted with disapproval the fact that the defendant was read two conflicting
21 versions of his rights (one version advised him that an attorney would be appointed free of
22 charge if he could not afford one, and the other one did not). 314 F.3d at 388. However, the
23 Ninth Circuit went on to note that an agent can easily rectify any confusion "by clarifying his
24 statements or advising [a defendant] to disregard the [a]dministrative [r]ights in favor of those
25 that [are] read to him under *Miranda*." *Id.* at 389. That is exactly the scenario that occurred
26 here.

27 ...
28 ...

1  Defendant was advised of his administrative rights at approximately 6:00 p.m. on July
2  2, 2007. After discovering that Defendant did in fact meet prosecution guidelines, agents then
3  specifically advised Defendant that his administrative rights no longer applied and he would
4  be processed for criminal prosecution. Afterwards, at 11:43 p.m., nearly six hours after
5  Defendant had been advised of his administrative rights, Agent Anderson advised Defendant
6  of his *Miranda* rights, which Defendant waived. Therefore, there is no *San Juan Cruz*
7  violation. The Court finds that Defendant's waiver was valid.
8
9  3. A Deliberate Two-step Interrogation Was Not Conducted by the Agents
10
11  Defendant also argues that his post-*Miranda* statement should be suppressed under
12  *Missouri v. Seibert,* 542 U.S. 600, 617, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). A
13  defendant's post-*Miranda* statement may be inadmissible if law enforcement officers use a
14  two-step interrogation process. *See id.* A two-step interrogation involves eliciting an
15  unwarned confession, administering the *Miranda* warnings and obtaining a waiver of *Miranda*
16  rights, and then eliciting a repeated confession. *See id.* at 609-10, 124 S.Ct. 2601. If the
17  interrogators deliberately employ the two-step strategy, the district court must suppress
18  post-warning statements unless the interrogators take curative measures to apprise the
19  defendant of his rights; if the two-step method is not deliberate, the post-warning statements
20  are admissible if voluntarily made. *Id.* at 622, 124 S.Ct. 2601 (Kennedy, J., concurring); *see*
21  *also United States v. Williams*, 435 F.3d 1148, 1157-58 (9th Cir.2006) (Justice Kennedy's
22  concurrence in *Seibert* is the Court's holding because it is narrowest grounds with which
23  majority of the Court would agree).
24  ...
25  ...
26  ...
27  ...
28  ...

1     Deliberateness may be found if "objective evidence and any available subjective
2 evidence, such as an officer's testimony, support an inference that the two-step interrogation
3 procedure was used to undermine the *Miranda* warning." *Id*. at 1158. Objective evidence
4 includes "the timing, setting and completeness of the prewarning interrogation, the continuity
5 of police personnel and the overlapping content of the pre- and post-warning statements." *Id.*
6 at 1159 (citing *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601).

7     Recently, the Ninth Circuit upheld a district court's denial of a defendant's motion to
8 suppress based on a similar argument as that raised by Defendant. In *United States v.
9 Narvaez-Gomez*, 489 F.3d 970 (9th Cir. 2007), the Border Patrol agent who transported the
10 defendant to the station asked the defendant whether he had ever been arrested by Border
11 Patrol and whether he had ever been deported. *Id*. at 973. Later, another Border Patrol agent
12 advised Defendant of his *Miranda* rights, which the defendant acknowledged and waived. *Id*.
13 The Ninth Circuit looked to the brief, informal setting of the pre-*Miranda* interrogation, the
14 second agent's sole involvement in the post-warning interrogation and the lack of reference
15 to the pre-warning statements during the more comprehensive post-warning interrogation. *Id.*
16 at 974. The court went on to say that the change in setting, and time span of approximately
17 four hours between statements, indicated a lack of deliberateness. *Id.*

18     Likewise, the facts in this case do not support a conclusion that a two-step interrogation
19 was used by the agents in order to obviate Defendant's rights. Agents advised Defendant of
20 his administrative rights at approximately 6:00 p.m. on July 2, 2007, and then took a statement.
21 At that time, agents had not yet realized that Defendant was eligible for prosecution. After
22 agents determined Defendant was indeed subject to criminal prosecution, they advised him that
23 his administrative rights no longer applied. At 11:43 p.m., Agent Anderson advised Defendant
24 of his Miranda rights. In the statement that followed, which totaled approximately a minute
25 and a half, neither the agent's questions nor Defendant's answers referenced the prior
26 questions asked and answered six hours earlier. Clearly, the disconnect in the objectives in the
27 separate questioning, the time span between the two interviews, and the brevity of the
28 post-*Miranda* interview collectively show that the agents did not engage in a deliberate

two-step interrogation so as to undermine Defendant's *Miranda* rights. Thus, the Court finds that no *Seibert* violation occurred.

        4.       The Delay Associated with Defendant's Post-*Miranda* Statement Was Not Unreasonable.

Lastly, Defendant alleges that his post-*Miranda* statement must be suppressed because it was elicited outside the six hour "safe harbor" period. Statements elicited "outside the six hour 'safe harbor' may be excluded solely for delay, but a court is not obligated to do so." *United States v. Van Poyck*, 77 F.3d 285, 288 (9th Cir. 1996) (citation omitted). The Ninth Circuit has identified two means of determining whether a statement made outside the "safe harbor" may be admissible. *Id.* at 288-89. In one line of cases, the court looked to the "reasonableness of the delay; if it [was] reasonable, the statement [was] admissible." *Id.* at 289 (citation omitted). In the other line, the court looked to "public policy concerns such as discouraging officers from unnecessarily delaying arraignments, preventing admission of involuntary confessions, and encouraging early processing of defendants; if public policy favors admission, the statement [was] admissible." *Id.* (citation omitted).

Here, Defendant was apprehended at 4 a.m., the heavy caseload prevented agents from processing Defendant until 5 p.m. Sometime after 6 p.m., agents determined that Defendant was subject to criminal prosecution. Once agents made that determination, Defendant was advised of his *Miranda* rights at 11:43 p.m. Although the post-*Miranda* statement technically fell outside the "safe harbor" period, the delay was not unreasonable. The delay in Defendant's processing was due to the heavy caseload occurring that day. Once agents determined Defendant was subject to prosecution, he was arraigned before the magistrate the next day (July 3, 2007). The Ninth Circuit has previously held that overnight delays are reasonable. *See id.* at 289-290 (overnight delay in arraignment due to unavailability of magistrate does not by itself render delay unreasonable under statute providing six-hour safe harbor for admissibility of statement prior to initial appearance).

...

Defendant's statement is also admissible under the second test because public policy does not require its suppression. "This is not a case where the [agents] intentionally postponed arraignment so they could interrogate [D]efendant" *Id.* at 290 (citation omitted). Indeed, agents were not even aware Defendant met criminal prosecution guidelines until sometime after 6 p.m. that evening. Upon their realization that Defendant was subject to criminal prosecution, Defendant was given his *Miranda* rights within a reasonable time, and arraigned thereafter at the earliest opportunity. Therefore, Defendants' Motion to Suppress is **DENIED**.

### D.   RULE 29

At the close of the Government's case-in-chief, Defendant orally moved for judgment of acquittal pursuant to Rule 29, and he later renewed the motion at the close of all of the evidence. Rule 29(a) requires a court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). After consideration of all the evidence, however, the Court **DENIES** Defendant's motion.

As stated above, Defendant is charged with one count of Attempted Reentry in violation of Title 8, United States Code, § 1326(a) and (b). The court finds the Defendant guilty of all charges. As illustrated below, the Government has proved beyond a reasonable doubt the required elements and factors for this offense.[2]

...

...

---

[2]

The United States must prove beyond a reasonable doubt that: 1) Defendant was deported from the United States; 2) Defendant had the conscious desire to re-enter the United States without consent; 3) Defendant committed an overt act that was a substantial step towards reentering the United States without consent; 4) Defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and 5) Defendant was an alien at the time of his attempted reentry into the United States.

*See* Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5A (West ed. 2003, approved January 2007).

1.  **Defendant Was Deported from the United States and Attempted to Re-enter after the Conviction of a Felony.**

Agent Thomas Steele, a United States Border Patrol Agent assigned to the United States Attorney's Office as liaison and custodian of the Defendant's "A" file, testified regarding Defendant's "A" file records. The Court admitted Exhibit Three (Order of Immigration Judge Dated April 29, 2002) and Exhibit Four (Warrant of Removal/Deportation Dated June 28, 2007), which were located in Defendant's "A" file. Both documents were admitted under the official records exception to the hearsay rule. The documents are self-authenticating "public records," *See* Fed. R. Evid. 803(8)(B); *see also*, *United States v. Loyola-Dominguez*, 125 F.3d 1315 (9th Cir. 1997). A stipulation to the fingerprint card that was taken of the Defendant was also admitted as Exhibit Nine. The parties further stipulated that the fingerprints on the fingerprint card in Defendant's "A" file (Exhibit Eight), taken the day of Defendant's apprehension on or about July 2, 2007, were indeed the fingerprints of Defendant. The parties also agreed by stipulation that the fingerprint on page two of Exhibit Four (Warrant of Removal/Deportation Dated June 28, 2007) belonged to Defendant. In addition, the Court admitted Exhibit Six (Judgment, Case No. 03CR294)[3] and Exhibit Seven (Plea Colloquy Dated April 29, 2003, Case No. 03CR294)[4] under the official records exception to the hearsay rule. *Id.*

The Court finds from the documentary evidence that an immigration judge ordered Defendant deported on April 29, 2002. A Warrant of Removal was issued on June 28, 2007. Defendant was physically removed to Mexico at the Calexico Port of Entry on June 28, 2007, by Border Patrol Agent Jason McGilvray, who testified to this fact and verified his signature on the Warrant of Removal. *See* Exhibit Four. As noted above, documentary evidence was entered into evidence pertaining to Defendant's prior conviction for Title 18, United States

---

[3] Defendant's Judgment of Conviction (Southern District of California Case Number 03CR0294) for the violation of Title 18, United States Code, § 1001 dated April 29, 2003, was entered into evidence as Exhibit Six.

[4] Exhibit Seven is a certified copy of the Court proceedings of Defendant's guilty plea on April 29, 2003.

Code, § 1001. The Defendant, who was sworn and under oath, admitted during the prior proceedings to being a citizen of Mexico, entering into the United States illegally, while knowing at the time it was illegal.

      2.     **Defendant Had the Conscious Desire to Re-enter the United States Without Consent.**

The testimony of Agent Macias indicated that he was aware of the fact that the remote system operator had picked up three persons on video in zone seven and that he went to assist the apprehending agent, United States Border Patrol Agent Manuel Romero ("Agent Romero"). Agent Romero apprehended the three persons, which included the Defendant, at approximately 4:00 a.m.

The Defendant was placed into Agent Macias' custody at 4:10 a.m. to process. Agent Macias identified Exhibit One as the ariel map of the border area. He explained that a six foot berm next to the drag road at the border was the location where the Defendant had to have crossed in coming to that area. Defendant obviously knew it was illegal to enter the United States as he admitted to this fact in his plea colloquy on April 29, 2003. Considering the time of the morning of the instant offense (4:00AM), crossing the six foot berm at the border, and Defendant's knowledge that entry to the United States is illegal, the Court finds that Defendant had a conscious desire to enter the United States and took a substantial step in that endeavor.

      3.     **Defendant Had Not Obtained the Consent of the Attorney General or the Secretary of Homeland Security to Reapply for Admission into the United States.**

Agent Steele testified that he requested that a search of the record for the Defendant be conducted by the Department in order to determine whether the Defendant had made any attempt to apply for re-admission. Exhibit Five is a Certificate of Nonexistence of Record. The document indicates a search was made under the Defendant's name and all names he was also known to use, and no re-application was found. The Certificate of Nonexistence proves

the absence of a public record and is therefore not excluded by the hearsay rule. *See* FRE 803(10); *see also, United States v. Mateo-Mendez*, 215 F.3d 1039, 1042-43 (9th Cir. 2000). A Certificate of Non-Existence of Records is admissible under Federal Rules of Evidence 803(10) and 902(4), which together expressly provide for the admissibility of such a document, without the testimony of the custodian. *See* FRE 803(10) ("evidence in the form of a certification in accordance with rule 902, or testimony" is sufficient).

        4.        Defendant Was an Alien at the Time of His Attempted Reentry into the United States.

The Court admitted Defendant's post-*Miranda* statement, and his admission that he is a citizen of Mexico who had illegally entered the United States. This is also confirmed by Defendant's admissions during his plea colloquy on April 29, 2003, where he admitted under oath that he is a Mexican citizen and he knew that it was illegal for him to enter the United States. *See* Exhibit Seven. The Court separately notes that while it may not be clear that Defendant's removal was part in parcel with Defendant's prior felony conviction, the Indictment nonetheless complies with the law. The Ninth Circuit in *United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007) stated that "the date of the removal, or at least the fact that [Defendant] had been removed after his conviction" should be alleged in the indictment. *Id.* at 752. The indictment addressed by the Ninth Circuit in *Salazar-Lopez* did not have the requisite language, and therefore the Court performed a harmless error analysis. *Id.* at 752-755. Here, however, the Indictment expressly states: "It is further alleged that defendant OSCAR JAVIER GARCIA-HERNDANEZ was removed from the United States subsequent to April 29, 2003." That date correlates with Defendant's prior conviction and is consistent with *Salazar-Lopez*.

...

...

...

...

### E. COURT'S RULING

After careful consideration of the evidence, the Court finds that all of the elements of a violation of Title 8, United States Code, § 1326(a) and (b) (Attempted Entry After Deportation) have been proved beyond a reasonable doubt. The Courts finds Defendant **GUILTY** of the charged offense. The Court further finds that Defendant was removed from the United States after his conviction for a felony on April 29, 2003, beyond a reasonable doubt.

**IT IS SO ORDERED**.

DATED: March 18, 2008

_____
M. James Lorenz
United States District Court Judge